168 P.2d 96

**TURNER v. SANCHEZ.**

No. 4922.

Supreme Court of New Mexico.

April 9, 1946.

W. C. Whatley, of Las Cruces, for appellant.

W. T. Scoggin, Jr., of Las Cruces, for appellee.

BICKLEY, Justice.

The jury at the trial of this ejectment suit was instructed to find a verdict for the plaintiff, and from the judgment thereupon entered in the district court, defendant appeals.

The plaintiff's right to the possession of the lands in dispute was that of a purchaser at a tax sale.

The defendant's grounds of resistance to that right were that the description contained in the tax sale certificate and in the tax deed was insufficient to identify the land, and that the County Treasurer of Dona Ana County, N. M., who at the time of the sale and at the time of the issuance of the tax deed was Deputy County Treasurer and himself interested in the sale of the property and in acquiring title thereto and in fact the real party in interest, in consequence of which the deed for taxes was void, invoking 1941 Comp. §§ 76-636, 76-637;· and that the land had been redeemed from the tax sale.

■ It cannot be doubted that a sufficient tender made at the proper time by the proper person will work a redemption, and it has been correctly held that a formal tender is not required where it would be useless. See Cooley Taxation, 4th Ed., Sec. 1574. See also Fernandez Co. v. Montoya, 42 N.M. 524, 82 P.2d 289, 118 A. L.R. 573; Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290; Gammill v. Mann, 41 N.M. 552, 72 P.2d 12.

The facts upon which the defendant claimed his right to redeem are as follows:

■ The tax sale was conducted January 23, 1942, and the redemption period therefore did not expire until January 23, 1944. At least three adequate offers to redeem were made. There is no controversy as to the timeliness or sufficiency of the offers so far as formalities are concerned. The only objection to the offers to redeem was that the defendant was not a person having a right to redeem. A word should be said concerning the background of the plaintiff's claim of right to possession,

since we find that it is not unusual for courts to contrast the situation of the party claiming the right to redeem with that of his adversary, whose claim to a tax title is that of a stranger to the title and rests solely upon such rights as had inured to him by virtue of the purchase of a right to acquire title subject to the provisions of the statute authorizing redemption.

For the year 1940, the land was assessed to one Apolino Guerra, under a description alleged by defendant to be insufficient, and so asserted by the officer refusing to allow redemption. In view of the conclusion we reach, we do not pause to discuss this alleged defect, which is vigorously asserted by the appellant. The land was sold to the State of New Mexico for delinquent taxes in the sum of $2.15, and a certificate of sale was issued to the State under date February 14, 1942, and on that date was assigned to one R. M. Perry, who from the evidence, seems to not have been well known to the witnesses. On June 2d, 1943, Perry assigned the certificate to N. R. Dessauer for $35.00, and under date January 25, 1944, the County Treasurer issued a tax deed to Dessauer. Thereafter, on February 23, 1944, Dessauer conveyed the land to L. Tracy Fox, who at all times material to the proceedings, was either Deputy County Treasurer or County Treasurer, for a consideration of $100. Then Fox sold the land to a Mrs. Hoffman for $1250, and Mrs. Hoffman became alarmed about the defendant's assertions of title and right of possession, and told Fox that she would have to deed the land back to him, whereupon with the assistance of Fox, she negotiated a sale to the plaintiff James J. Turner, for $1500. The evidence shows that Mr. Fox manifested early interest in the transactions, which defendant claims was not consistent with his official duties. As to this claim of defendant, we express no opinion except that we do not find the tax deed was void on that account.

At all times material to this inquiry, defendant was in the actual, visible and hostile possession of the land involved, farming it after having obtained a deed from Henrietta M. Belknap, dated and acknowledged April 2, 1940. The objection to this deed as showing a legal or equitable right in the defendant to redeem was that the description contained therein did not serve to sufficiently identify the land as being the same as the land which had been sold for taxes. The trial court may have been right in refusing to admit this deed in evidence as a muniment of title, without a preliminary showing that the description in the deed with the aid of extrinsic evidence, embraced the land involved in the suit. Whether it afforded "color" of title may be a different question. However, the defendant produced another warranty deed to him as grantee, dated August 20, 1942, executed by "Corporation of Mesilla (also known as Mesilla Civil Colony Grant acting through the Board of Trustees thereof)." This conveyance recites:

"This conveyance being issued pursuant to authorization and direction of the Mes-

illa Civil Colony Grant, dated and entered upon the minutes of said Board, on August 20, 1942."

 It was conceded by plaintiff that the description of the land in this deed was the same as the land in controversy and the only objection made thereto was that it was not shown that the lands described were not allotted lands. The court sustained this objection and refused to receive this deed in evidence, and this refusal is also assigned as error. The plaintiff relied and here relies upon Williams v. Lusk, 28 N.M. 146, 207 P. 576. In that case we held that the Corporation of Mesilla has no power of disposition over the lands of the Mesilla Grant not held in common, and held also that as a prerequisite to the validity of a deed from the incorporation of Mesilla, the party claiming under the deed must show that the lands which it purports to convey are a part of the lands held in common. That was good law in that case which was a suit to quiet title, involving who had title to the property, based solely upon muniments of title. But in that case and also in Romero v. Herrera, et al., 30 N.M. 139, 228 P. 604, it is indicated that such a deed, notwithstanding its infirmities, may afford color of title sufficient to support a claim of adverse possession. It has been asserted that deeds which are defective because of want of title or of authority to convey in the grantor, may be "color" of title. 1 Am. Jur. Adverse Possession, Sec. 196. Even void or voidable conveyances, or even fraudulent conveyances, will give "color" of title. 1 Am. Jur. Adverse Possession, Secs. 197, 198. See also Annotation, 88 Am.St.Rep. 701.

It seems to us that the narrow question in the case before us is: Does a person in actual, visible and hostile possession of land under color of title short of the prescriptive period come within the provision of 1941 Comp. § 76-713, declaring that: "Any person having a legal or equitable right therein" may redeem property sold for delinquent taxes?

Black on Tax Titles, Sec. 367, says:

"It has even been laid down in broad terms that anyone who is in possession of real estate under claim and color of title is entitled to redeem from a sale thereof for taxes."

See also Cooley Taxation, 4th Ed., Sec. 1565. A supporting argument employed by some of the decisions is that the redemption will inure to the benefit of the true owner, and the party paying cannot after the time for redemption expires, withdraw the money, and hence no good reason can be given why a claimant under an imperfect title should not have the power to redeem and let it inure to the true owner of the land. This plausible argument of convenience and justice has recently been employed by the Georgia Supreme Court in Crump v. McEntire, 190 Ga. 684, 10 S.E. 2d 186, where the court pointed out that a lawful sale of land for taxes may be perfected so as to accomplish absolute devolu-

tion of title to land unless the land is redeemed as provided by law. The court went on to say:

"The effect of redemption will not be a transfer of the inchoate title of the purchaser at tax sale, but will be to extinguish the tax sale, the title as before the sale in the defendant in fi. fa., subject to all existing liens of interests of others as against the defendant in fi. fa. * * * This being the effect, the purchaser, having received the redemption money, is not interested at all in what becomes of the property. As to all other persons who might have had a right to redeem, the redemption is in their interest, and consequently they are not adversely affected."

Just how this redemption will finally affect the title to the property involved is a question not presented by the record in the case at bar, but may arise when one asserting a title superior to that of defendant attempts to litigate the matter with the defendant Sanchez. The decisive question here is whether the right to redeem has been properly cut off.

Among the cases cited by Black and Cooley, are Shearer v. Woodburn, 10 Pa. 511; Whitaker v. Ashbey, 8 La.Ann. 117, 8 So. 394; Foster v. Bowman, 55 Iowa 237, 7 N.W. 513; Brown v. Day, 78 Pa. 129; Levick v. Brotherline, 74 Pa. 149; and Johnson v. Sowden, 25 Idaho, 227, 136 P. 1136, where it was decided:

"A 'party in interest,' within the meaning of Rev.Codes, § 1770, providing that redemption of the property sold at tax sale may be made by the owner or any party in interest within three years from the date of purchase, includes a party who was in possession of the property under claim of right at the time it was sold for taxes and who continued in the exclusive possession from that time until redemption was made, especially where the purchaser at the tax sale had no interest in the property except such as he acquired by tax certificate, and where the purchaser of such certificate has never been in possession of the property."

In Brown v. Day, supra, the court used a persuasive argument as follows:

"Now, clearly, a title such as would enable the possessor of it to recover against an intruder would be sufficient to enable the same party to pay the taxes on the land he can thus recover. In doing this he is performing a public duty and injuring no one, for the true owner is benefited by his act, and his title saved from a sale, while the subsequent purchaser from the treasurer had not then come into existence, and had then no rights to be affected. As the owner of even a defeasible title he ought to be permitted to protect himself by payment, for the true owner may never come, or may be barred by lapse of time, and the title may never be defeated."

Crump v. McEntire, Ga., 1940, supra [190 Ga. 684, 10 S.E.2d 189], is a useful decision in support of the conclusion we reach. It was there decided that a statute using the term "or other persons having an interest in such property" considered with the con-

text, contemplated as one having a right to redeem, a person having possession of the property at the time of the tax sale even though a stranger to the claim of title of the delinquent taxpayer, and whose possession is adverse to such claim of title. The court in support of the substantiality of possession as a right, employed the argument that bare possession of land will support an action for damages against any person wrongfully interfering with such possession, and that it may ripen into paramount title by prescription if continued adversely under color of title for the statutory period and that prior possession will support an action in ejectment against one wrongfully ousting the possessor. The court having in mind all of the rights of the possessor of land, decided:

"One in possession of realty, adversely to the claim of title of a defaulting taxpayer, has by virtue of such possession such interest in the land, within meaning of the act giving to persons other than the owner the right to redeem land sold at tax sale, as will authorize him to redeem the land from the purchaser at a sale for state and county taxes."

In Stewart v. Wheatley, 1943, 182 Md. 455, 35 A.2d 104, it was decided:

"Any right which amounts in law or in equity to ownership of all or any part of the land, or any right of possession which can be deemed an estate therein, makes the person an 'owner', in so far as it is necessary to give him the right to redeem from tax sale. Code Pub.Loc. Laws 1930."

In Sherrill v. Faulkner, 1940, 200 Ark. 1006, 142 S.W.2d 229, a principle frequently asserted was reiterated as follows:

"Almost any right at law or in equity, perfect or inchoate, or in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle party holding it to redeem from tax sale."

It has been asserted, and we do not doubt, that one who has acquired title to land by adverse possession has a legal and/or equitable right in land sold for taxes sufficient upon which to predicate the right to redeem from a tax sale and we think the right also extends to one who may not yet have completed the prescriptive procedure, if he is in good faith on his way. Our law gives one the right to acquire title by adverse possession and this right is capable of protection by means of redemption from tax sale.

Fortunately, the trail has been blazed for correct construction of our statute. In Fernandez Co. v. Montoya, 42 N. M. 524, 82 P.2d 289, 118 A.L.R. 573, we decided:

"Statutes providing for redemption from tax sale are to be construed liberally in favor of the redemptioner."

And in Cox v. Shipe, 44 N.M. 378, 102 P.2d 1115, we held that the holder of a tax sale certificate not only has a right to pay delinquent taxes for other years on the property sold, but must do so as a condi-

tion precedent to receipt of tax deed by him, and also that a holder of tax sale certificate must redeem property sold from all outstanding tax sale certificates to avoid exposure of his own certificate to redemption by rival holder of certificate for another year's taxes. We indicated that a tax sale certificate did not vest title in the holder thereof, but only an inchoate right to complete title in certain contingencies. We quoted with approval, 61 C.J. 1245 at sec. 1690:

"As a general rule any person may redeem land from a tax sale who has an interest in the property which would be affected by the maturing of the tax title in the purchaser."

Now, under our tax laws, a person has a right to acquire title to land by adverse possession. He must found this right, among other factors, upon color of title and possession and the payment of taxes. It would seem that since payment·of taxes is a factor, it is no far cry to say that he has such an interest as will permit him to redeem from a tax sale, since paying the redemption money is in itself a species of payment of taxes. See Clark v. Trammell, Ark., 186 S.W.2d 668, and Kershner v. Sganzini, supra. And furthermore, the failure of one in possession of land under color of title to redeem would entitle the tax title holder to take possession of the land (Hood v. Bond, 42 N.M. 295, 77 P.2d 180), which would interrupt and deprive the erstwhile possessor of an essential element in his quest to acquire title by adverse possession. The analogy is apparent. The holder of a tax sale certificate has an inchoate right only, so has the adverse claimant in possession of land a right inchoate, which if pursued and protected, may ripen into title.

We conclude that the tax deed upon which plaintiff relied in this ejectment action is a nullity and for the reasons heretofore stated, we must reverse the judgment of the District Court and remand the cause to enable appellant to redeem the land in question by paying to the proper officer the amount realized by the tax sale with interest as provided by law, and the payment of such taxes as may be properly required as a condition of such redemption.

The judgment is reversed, and the cause remanded for such further proceedings as may be proper in conformity with this opinion, with costs. And it is so ordered.

SADLER, C. J., and BRICE and LUJAN, JJ., concur.

HUDSPETH, J., did not participate.