LOUIS P. MONDELLO *vs.* HANOVER TRUST COMPANY.

Suffolk.    March 25, 1925. — May 22, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Trust Company,* Foreign exchange.    *Contract,* Performance and breach. *Tender.    Waiver.*

In an action against a trust company for money alleged to have been had and received by the defendant to the plaintiff's use and for damages alleged to have resulted from failure by the defendant to perform a contract to purchase a certain number of Italian lire for the plaintiff, it appeared that the provisions of the contract required that the plaintiff should make a certain payment in cash to the defendant on a certain day, when he would receive the lire.    Such payment was not made. The plaintiff contended that he tendered payment and that the tender was refused by an agent of the defendant, and to prove that fact relied on the following testimony by himself: "I asked . . . [the agent] if he was ready to deliver those liras that I have contracted for with them because I have already the cash to pay for them. . . . [The agent] asked me, he says, 'Why don't you know we don't buy those liras for you?' I said, 'Where are the liras that were bought for me?'—Q. What did he tell you?  A. He told me it wasn't necessary to buy the liras for me. — Q. And what did you say?  A. I said, 'Why do you pay for, why do you charge me some interest if you don't buy them?' — Q. Anything further he said?  A. He said that is his business."  *Held,* that

(1) To constitute a valid tender, an actual production of the money was necessary unless such production was found to have been dispensed with by a declaration by the defendant that it would not receive it or by some equivalent declaration or act;

(2) The evidence did not warrant a finding of a valid tender;

(3) The reply to the plaintiff by the defendant's agent, that it was not necessary to buy the lire for him, could not rightly be construed as a statement that the defendant was unable to deliver them, nor as a refusal to do so, and thereby excuse the plaintiff from making a tender.

It appeared that the contract above described called for performance by both parties in March, 1920.    There was evidence that in June and July, 1920, lire were delivered by the defendant on the plaintiff's order.

The plaintiff's evidence tended to show that such deliveries were on new and separate contracts upon payments of cash by him. The defendant's evidence tended to show that they were on the former contract after further payments on account thereof by the plaintiff. The commissioner of banks took possession of the business and property of the trust company in August, 1920. The trust company filed a declaration in set-off for the amounts due on the contract. An officer of the trust company testified that, if the trust company's contention that the deliveries in June and July were on that contract was sustained, there was due the trust company as of the date when the commissioner took possession $1,463.54, while, if the contention of the plaintiff that such deliveries were on new and separate cash contracts was sustained, there was due the trust company $1,938.47. The trust company moved for verdicts for both sums. Both motions were denied. *Held*, that the trust company was entitled to a verdict on its declaration in set-off but that such verdict should be limited to the amount its officer stated was due on the basis of its own contentions.

CONTRACT, with a declaration in four counts, the first and third counts being for money had and received by the defendant for the use of the plaintiff, and the second and fourth counts being for damages alleged to have resulted from breach by the defendant of the contracts of August 8 and September 18, 1919, described in the opinion. Writ dated May 23, 1922.

The defendant filed a declaration in set-off in four counts, the first count being for a balance of the purchase price of lire alleged to be due under the contract of August 8, 1919; the second for a similar balance alleged to be due on the contract of September 18, 1919; and the third alleging that the plaintiff, defendant in set-off, owed the trust company on both contracts "the balance of said purchase price with interest thereon, after crediting him with the exchange value of the remaining seventy-eight thousand lire and with three per cent interest in lire thereon, in accordance with his agreements to purchase." The fourth count was upon an account annexed for $1,496.02.

In the Superior Court, the action was tried before *Walsh*, J. The witness Merrill, referred to in the opinion, "testified that, crediting the plaintiff with his payments, including those of June 4 and June 28, 1920, charging him with six per cent interest, and crediting him with three per cent in lire and with the value of the lire at the rate of exchange on

August 11, 1920, when the commissioner took possession, the plaintiff owed the Trust Company on that date $1,463.54. If, as contended by the plaintiff, the payments of June 4 and June 28 were not made on the contract of September 18, 1919, he figured, in the same way, that the plaintiff owed the trust company on August 11, 1920, $1,938.47."

Other material evidence is described in the opinion. At the close of the evidence, the defendant by a motion asked the trial judge:

"1. To order a verdict for the trust company on the plaintiff's declaration.

"2. To order a verdict for the trust company on the declaration in set-off.

"3. To order a verdict for the trust company for the balance of the purchase price of the lire, which the plaintiff contracted to buy, with interest at six per cent, after crediting the plaintiff with three per cent interest in lire, in accordance with the contract, and with the value of the lire at the rate of exchange on August 11, 1920, when the commissioner of banks took possession of the Trust Company.

"4. To order a verdict for the trust company for $1,463.54.

"5. To order a verdict for the trust company for $1,938.47."

The motions were denied. There was a verdict for the plaintiff in the sum of $6,229.88, and for the plaintiff, defendant in set-off. The trust company alleged exceptions.

*F. H. Smith, Jr.,* for the defendant.

*F. T. Conley,* for the plaintiff.

CROSBY, J. On August 8, 1919, the plaintiff and defendant entered into a written agreement by which the plaintiff was to purchase and the defendant to sell fifty thousand Italian lire for the sum of $5,662.51. At that time the plaintiff paid $1,970 on account; the balance was to be paid on or before December 31, 1919, with interest at six per cent from August 8, 1919; and the defendant agreed to pay three per cent interest in lire on the fifty thousand lire from the same date. On September 18, 1919, the plaintiff and defendant entered into another written agreement for the purchase and sale of seventy-five thousand lire for

the sum of $7,470.12. At · that time the plaintiff paid $3,085.86 on account; the balance was to be paid on or before March 15, 1920, with interest at six per cent from September 18, 1919; and the defendant agreed to pay three per cent interest in lire on the seventy-five thousand lire from the same date. The plaintiff also paid $121.71 interest on these contracts. The declaration alleges that the defendant neglected and refused to carry out the contracts "thereby making performance on the part of the plaintiff impossible." He seeks to recover the sums so paid, amounting to $5,177.57.

On August 11, 1920, the commissioner of banks, acting under authority of St. 1910, c. 399, now G. L. c. 167, § 22, took possession of the property and business of the defendant company. Thereafter the plaintiff filed a proof of claim with the commissioner for $5,055.86, which was rejected, and this action is brought to establish his claim. It is the contention of the defendant that it has at all times been ready and willing to perform its part of the contracts and deliver to the plaintiff the lire, but that the plaintiff has neglected to pay or to offer to pay for the same in accordance with the contracts. At the close of the evidence, the defendant moved that a verdict be directed in its favor on the plaintiff's declaration, and on its declaration in set-off for the balance of the purchase price of the lire with interest in accordance with the contracts. The motion was denied subject to the defendant's exception. The defendant also excepted to the refusal of the trial judge to give certain requests for rulings and to parts of the instructions to the jury.

Important questions which lie at the foundation of the plaintiff's claim are, whether he demanded of the defendant the delivery of the lire and made a tender of the amount due, which was refused by the defendant, and whether, if no such tender was made, it was unnecessary to make it by reason of statements and conduct of one Nobile, an agent of the trust company.

The entire evidence relating to the matter of tender is contained in the testimony of the plaintiff. He testified that on October 2, or 3, 1919, he went to the defendant's bank and

had the following conversation with Nobile: "I asked Mr. Nobile if he was ready to deliver those liras that I have contracted for with them because I have already the cash to pay for them. Mr. Nobile asked me, he says 'Why don't you know we don't buy those liras for you?' I said, 'Where are the liras that were bought for me?' — Q. What did he tell you? A. He told me it wasn't necessary to buy the liras for me. — Q. And what did you say? A. I said, 'Why do you pay for, why do you charge me some interest if you don't buy them?' — Q. Anything further he said? A. He said that is his business."

To constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it. It should be shown to the person to whom it is tendered. There must be an actual production of the money unless such production be dispensed with by the declaration of the party to whom it is due that he will not receive it, or by some equivalent declaration or act. A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender. The rule so stated is recognized and adopted by this court and prevails in many other jurisdictions. *Breed* v. *Hurd*, 6 Pick. 356. *Folsom* v. *Barrett*, 180 Mass. 439, 442. *Peugh* v. *Davis*, 113 U. S. 542, 545. *Scott* v. *Franklin*, 15 East, 428, 438. *Sargent* v. *Graham*, 5 N. H. 440. *Lewis* v. *Mott*, 36 N. Y. 395. *Eddy* v. *Davis*, 116 N. Y. 247. *Brown* v. *Gilmore*, 8 Maine, 107. *Holt* v. *Brown & Co.* 63 Iowa, 319. *Chase* v. *Welsh*, 45 Mich. 345. *Potter* v. *Thompson*, 10 R. I. 1. See also cases cited in 22 Am. Dec. 223, 224, 225, note.

The reply to the plaintiff, made by Nobile, that it was not necessary to buy the lire for him, could not rightly be construed as a statement that the defendant was unable to deliver them, nor as a refusal to do so, and thereby excuse the plaintiff from making a tender and entitle him to their delivery on payment of the amount due. The undisputed evidence showed that the defendant maintained a deposit of many thousand lire in the Credito Italiano at Genoa, Italy, at all times between the date when the first contract

was made with the plaintiff and the time when the commissioner took possession of the trust company. Besides, there was no evidence to show that the defendant did not have in its bank, at the time when the conversation between the plaintiff and Nobile took place, sufficient lire to deliver to the plaintiff on payment of the balance due under the contracts. The manager of the foreign department of the trust company, called by the plaintiff, testified that at all times from August 8, 1919, to August 11, 1920, when the bank commissioner took possession, it owned or had to its credit sufficient lire to fulfil the plaintiff's contracts of August 8 and September 18, 1919; and there was no evidence to the contrary.

The cases cited by the plaintiff which hold that if the person to whom money is due evades a tender, or absolutely refuses to accept money due, a tender is deemed to have been waived, are distinguishable in their facts from the case at bar. *Tasker* v. *Bartlett*, 5 Cush. 359. *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322. *Gilman* v. *Cary*, 198 Mass. 318.

The plaintiff testified that in June, 1920, he bought from the defendant forty thousand lire for which he paid cash and received a draft on Messina, Italy; that in July following he bought from the defendant seven thousand lire for which he also paid cash and received a draft therefor; that these transactions had nothing to do with the contracts out of which this action arises. He further testified that he bought lire from the defendant on other occasions, including twenty-five thousand on August 8, 1919, which he afterwards paid for.

One Merrill, an official of the defendant, testified that in June, 1920, the plaintiff was told that he could not have lire until he made a payment on the balance due on his contracts; that the plaintiff then paid in cash $2,325 and thereafter paid $500; that the two sums were credited on the contract for seventy-five thousand lire; that at the plaintiff's request, the defendant cabled forty thousand lire to Messina, and afterwards cabled seven thousand more to the same place; that both of these amounts were sent on account of the contract of September 18, 1919.

This witness further testified that, if the payments above referred to (made in June, 1920,) were not made on the contracts, as contended by the plaintiff, but were cash transactions, the plaintiff owes the defendant $1,938.47. In view of Merrill's admission that the plaintiff owed the defendant but $1,463.54 when the commissioner took possession, if the defendant is entitled to recover on its declaration in set-off, the amount it can recover is limited to that sum with interest, in accordance with the terms of the contracts.

As there was no evidence to warrant a finding that the plaintiff made a valid tender of the amount due, nor that a tender was waived by the defendant, the court should have allowed the defendant's motion for a directed verdict in its favor on the declaration, and ordered a verdict for the trust company on the declaration in set-off, in the sum of $1,463.54 with interest at six per cent, in accordance with the contract.

Since the motion for a directed verdict should have been allowed, the defendant's other exceptions need not be considered.

*Judgment for the defendant in the sum of $1,463.54 with interest and costs.*